FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 25, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLAS K., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Defendant. | NO. 2:24-CV-0062-TOR <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT |

BEFORE THE COURT is Plaintiff's motion seeking Summary Judgment in favor of reversal of the Social Security Commissioner's denial of Title XVI benefits (ECF No. 9). The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court DENIES Plaintiff's motion and AFFIRMS the Social Security Commissioner's denial of benefits.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 2

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

On July 20, 2020, Plaintiff filed for Title XVI supplemental security income, with an alleged onset date of July 1, 2020. Administrative Transcript ("Tr.") ECF No. 6 at 26. Plaintiff generally alleged he was disabled due to lumbar degenerative disease, depressive disorder, anxiety disorder, panic disorder, post-traumatic stress disorder, a learning disorder, attention deficit hyperactivity disorder ("ADHD"), a personality disorder, pain in his left ankle, obesity, hypertension, seasonal allergies, headaches, and mild asthma. Tr. 28–29. The application was initially denied on September 2, 2021, and upon reconsideration on June 6, 2022. Tr. 26. By mutual agreement, the Administrative Law Judge ("ALJ") conducted a telephonic hearing on June 28, 2023, with Ms. Kelly McCain appearing as a vocational expert. *Id*. The ALJ denied Plaintiff's claim on July 20, 2023. *See generally* Tr. 26–38. Plaintiff's claim was denied on appeal on January 5, 2024. Tr. 6.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since the onset date, July 20, 2020. Tr. 28.

At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, depressive disorder, anxiety disorder, panic disorder, and post-traumatic stress disorder. *Id*. The ALJ found that Plaintiff's diagnosis of a learning disorder in reading, writing, and math to be unsupported by adequate testing, and therefore not a medically determinable impairment; his ADHD diagnosis as inconsistent during evaluations across the relevant period, and therefore unsupported by the record; and his personality disorder as not diagnosed during the relevant period and unsupported by objective evidence or the longitudinal record. *Id*. Finally, the ALJ found that Plaintiff's left ankle osteoarthritis was not a severe condition that would affect his vocational limitations, and similarly found that his obesity, hypertension, seasonal allergies, headaches, and mild asthma were all transient and non-severe. Tr. 29.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). As to Plaintiff's severe physical impairments, the ALJ determined that they do not meet or medically equal listing 1.15, as Plaintiff does not require a device such as a walker or a cane and has no documented inability to use his upper extremities. Tr. 29.

As to Plaintiff's severe mental impairments, the ALJ determined that when considered singularly or in combination, they did not meet or medically equal the

criteria as set forth in 12.04, 12.06, and 12.15, and did not result in a "Paragraph B" impairment of one extreme limitation or two marked limitations in functioning. *Id*. The ALJ determined that Plaintiff had a moderate limitation in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and managing oneself. Tr. 29–30. These findings were largely based on two consultive evaluations, one conducted by Dr. Justin Stamschror on July 26, 2021, and one conducted by Dr. Patrick Metoyer on February 5, 2022. *Id*. Additionally, the ALJ did not find that Plaintiff's impairments satisfied "Paragraph C." Tr. 30.

Based on the record, the ALJ determined that Plaintiff could perform a full range of medium work as defined in 20 CFR 416.967(c) with limitations including:

> [H]e can lift and carry forty pounds occasionally and fifteen pounds frequently; he can occasionally stoop; he is limited to simple, routine tasks; he can have only occasional contact with the public, coworkers, and supervisors, with no collaborative tasks; he needs a routine, predictable work environment with no more than occasional changes; and he would be absent from work eight to ten days per year.

Tr. 30.

As part of determining Plaintiff's RFC, the ALJ engaged in a two-step process by which he first assessed whether Plaintiff's underlying medical impairments could reasonably be expected to produce the claimant's symptoms and if so, second whether the symptoms have the requisite intensity, persistence,

and limiting effect of Plaintiff's work-related activities. Tr. 30–31. The ALJ found that Plaintiff's medically determinable impairments could cause the alleged symptoms, but the intensity, persistence, and limiting effects of the symptoms were not consistent with the record. Tr. 31. In expanding upon this finding, the ALJ discussed that the record supports Plaintiff's complained of lower back pain, but imaging shows mild degeneration disc disease and osteoarthritis in the left ankle and noted that Plaintiff had not seen a neurosurgeon or attended physical therapy. *Id*. Regarding Plaintiff's mental impairments, the ALJ found the mental status exams on the record to be "mostly normal. Tr. 32. He discussed instances where Plaintiff presented with moderate symptoms, including in affect and anxiety, but noted even when Plaintiff appeared in distress, he was still cooperative, engaged, and alert. *Id*. The ALJ also took into account Plaintiff's record of stating that his mental health impairments were improving with the use of medication and stated that Plaintiff does not routinely see a counselor. *Id*. In making this finding, the ALJ consulted both medical and lay opinions in the record. Tr. 32–36.

At step four, the ALJ determined that Plaintiff did not have a relevant work history pursuant to 20 CFR 416.965.

At step five, the ALJ found that Plaintiff is able to perform work in the national economy based on his age, education, work experience, and residual functional capacity. Tr. 36. At the hearing, the vocational expert assessed

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 9

occupational opportunities for an unskilled, medium work occupational base and determined that occupations such as: marker, housekeeper, and production assembler would be available nationally. Tr. 37.

Given the above steps, the ALJ determined that Plaintiff was not disabled.

## ISSUES

Plaintiff has filed a motion for summary judgment, arguing that no issues of material fact remain with respect to the final decision to deny his application for Title XVI supplemental security income. Plaintiff raises the following issues on review:

   I.   Whether the ALJ improperly evaluated the opinions of Plaintiff's medical sources.

   II.  Whether the ALJ failed to conduct a proper step three analysis.

   III. Whether the ALJ satisfied step five.

ECF No. 9 at 2.

## DISCUSSION

**I.   The ALJ properly evaluated the opinions of the medical sources and considered Plaintiff's impairments.**

   A. *Designation of Plaintiff's Learning Disorder, Personality Disorder, and ADHD as Not Severe*

Plaintiff argues that the ALJ did not properly include his learning disorder,

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 10

1  ADHD, and personality disorder as severe impairments, as evidence exists on the
2  record that supports a finding that each of these disorders contributes to his
3  disability.  ECF No. 9 at 7.  Plaintiff faults the ALJ for not expanding upon what
4  kind of testing would have been satisfactory to determine he had a learning
5  disorder, particularly with the diagnosis of a specific learning disorder reading,
6  writing, and math by Dr. Patrick Metoyer, Ph.D. on February 5, 2022.  Tr. 28.
7  Plaintiff argues that there is ample evidence in the record to support a finding of a
8  learning disorder, including his own reporting, evidence that he took special
9  education classes in order to obtain his high school degree and performed
10 relatively below average, and indication by medical professionals in this matter
11 that Plaintiff may have a learning disability.  Further, Plaintiff argues that the ALJ
12 did not properly credit the ADHD and personality disorder diagnosis as similarly
13 erroneous.  ECF No. 9 at 11.
14     At step two, a plaintiff must present medical evidence of signs, symptoms,
15 and laboratory findings of a medical impairment, his or her own statements alone
16 will not suffice.  20 C.F.R. § 416.921.  An impairment may be found non-severe
17 when "medical evidence establishes only a slight abnormality or a combination of
18 slight abnormalities which would have no more than a minimal effect on an
19 individual's ability to work. . ."  Social Security Ruling (SSR) 85-28, 1985 WL
20 56856, at *3.  Similarly, an impairment is not severe if it does not significantly

limit a claimant's physical or mental ability to do basic work activities, which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.922.

In evaluating a claimant's mental impairments, an ALJ follows a special two-step psychiatric review technique.  *See* 20 C.F.R. § 416.920a.  First, the ALJ must determine whether there is a medically determinable impairment.  20 C.F.R. § 416.920a(b)(1).  If the ALJ determines an impairment exists, the ALJ must rate the degree of functional limitation resulting from the impairment in the following four broad functional categories: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 416.920a(c)(3).  If the ALJ rates the degree of limitation as "none" or "mild," the ALJ will generally conclude the impairment is not severe.  *Id*.

Here, the ALJ found Plaintiff's learning disorder, ADHD, and personality disorder were not medically determinable, and therefore did not proceed to the second step of the analysis.  Tr. 28.  With respect to the learning disorder, the ALJ did not commit harmful error.  The ALJ's denial on the basis of inadequate testing

1  is set against a backdrop of a record full of examinations that do not discuss or

2  diagnose a learning disorder at all, and one conducted finding an inadequate basis

3  for the earlier diagnosis a learning disorder as a disability.  Tr. 85.  In the instance

4  of Dr. Moteyer, who did ultimately find a learning disorder, the report stated that

5  the disorder was "moderate," and therefore would not interfere with his ability to

6  perform basic work activities.  20 C.F.R. § 416.920(c).  Further, at later points in

7  the findings, the ALJ did expand upon his view of Dr. Metoyer's report, and its

8  finding of "moderate," limitations in each of his diagnoses, including those

9  rejected as not severe in step two.  Tr. 35.  This is supported by the ALJ's reliance

10 on the finding of medical evaluators, Dr. Aaron Snyder, Katherine Harrison,

11 Psy.D, and Dr. Eugene Kester, who appear to have viewed Plaintiff's mental

12 impairments in a holistic way and determined that he was not disabled.  The ALJ

13 credited these opinions because they reflected the longitudinal record and provided

14 a narrative.  Tr. 36.  And specifically contained in the section on residual

15 functional capacity, the ALJ discussed that the grades Plaintiff received in high

16 school ultimately allowed him to graduate with a high school diploma.  Tr. 31.

17 Therefore, even if the ALJ erred in not formally considering the Plaintiff's learning

18 disorder at step two, he still considered and rejected Plaintiff's diagnosis of a

19 learning disorder to be so great as to impede his ability to work.

20         The ALJ similarly did not err in rejecting the diagnosis of ADHD and

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 13

personality disorder as not reflected in the broader record. The ALJ noted and rejected Dr. Genthe's diagnosis as unsupported and Dr. Metoyer's rule out diagnosis as not actually diagnosing ADHD. Tr. 28. And further, found that Dr. Genthe's diagnosis of a personality disorder with avoidant features was similarly not supported by the record. *Id*. In considering the record as a whole, including Dr. Harrison's findings, the ALJ did not commit reversible error when determining that there was not enough consistent support in the record to making a finding that either ADHD or a personality disorder had enough consistent support as to be considered a medical impairment. The vast majority of the medical professionals on the record that noted Plaintiff had either ADHD or a personality disorder noted that neither impairment would impact Plaintiff so greatly that he would be prohibited from working. Tr. 76–77, 348, 489–90.

      B. *Opinions of Dr. Thomas Genthe*

The ALJ's error at step two was accompanied, Plaintiff argues, by a failure to consider Dr. Thomas Genthe's 2020 report as finding a personality disorder, while simultaneously giving weight to a 2019 report finding no disability. *Id*. at 11–12. However, the ALJ explicitly stated:

> The evaluations of Dr. Genthe are both dated before the application date, and thus have limited relevance. They are also cursory evaluations with opinions given on checkbox forms with no meaningful explanation for the ratings. The 2020 evaluation, in particular, is inconsistent with the longitudinal record, and ignores the evidence of over-reporting from the 2019 evaluation (PAI). It is also inconsistent

with every other medical opinion in the record. Tr. 34.

The ALJ did not state he was not considering either opinion by Dr. Genthe, but instead followed the requirements set forth in 20 C.F.R. § 416.920a(c)(1), by evaluating and limiting the relevance of both opinions as considered against the rest of the record. Further, he did not generally err because, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen,* 885 F.2d 597, 600 (9th Cir. 1989)). As such, the ALJ did in fact take both of Dr. Genthe's opinion into account when making the ultimate determination, and stated that neither was particularly relevant, *in part* because each predated the alleged date of onset.

### C. Plaintiff's testimony and evaluation of record

Plaintiff contends that the ALJ erred by considering that he has not sought higher levels of care to treat his mental impairments, including seeking inpatient or aggressive outpatient care, or the diagnosis of a psychiatrist. ECF No. 9 at 13. However, he argues that he does manages his mental impairments with under the care of an ANRP and has never refused treatment. *Id*. Moreover, Plaintiff argues that the ALJ's characterization of his frequent trips to the emergency room as "drug seeking behavior," is unsupported by the record. *Id*. at 14.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 15

First, an ALJ is permitted to make an inference about the course of treatment a plaintiff is seeking, when presented with information that plaintiff could pursue a more aggressive form of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.")). The observation that Plaintiff could pursue a more aggressive form of treatment to combat what he views as debilitating symptoms is not harmful error. Furthermore, Plaintiff takes the ALJ's exact words out of context. The ALJ took into account that Plaintiff receives medication management from a nurse practitioner and found this course of treatment was received with stabilizing and effective results with no indication of total disability. Tr. 32. While true, the ALJ did indicate he found Plaintiff's frequent trips to the emergency room coupled with Plaintiff's chosen course of treatment as not congruent with the level of impairment he was claiming, the ALJ also provided a caveat for this statement, stating "[i]n any event, it does not show persistent symptoms, but rather only a sporadic spikes in symptoms, which are accounted for by absences in the residual functional capacity." Tr. 33. The ALJ's observations about the treatment Plaintiff pursued or trips taken to the emergency room was not the only or even the primary reason for a finding of no disability, and is not harmful error.

## II. The ALJ did not err at step three.

Plaintiff's argument surrounding step three of the ALJ's analysis is predicated on a finding that the ALJ erred at step two by not considering Plaintiff's learning disorder, ADHD, and personality disorder. ECF No. 9 at 14–15. This argument is moot given the above finding that the ALJ did not commit harmful error in omitting these impairments as non-severe.

## III. The ALJ addressed all of Plaintiff's impairments at step five.

To the extent that Plaintiff relies on impairments previously determined to be non-severe, the Court will not readdress those arguments. ECF No. 9 at 15. To the extent that Plaintiff argues that the ALJ did not take his anxiety and lower back pain, the residual functional capacity indicated that he could carry forty pounds occasionally, fifteen pounds frequently, and requires simple routine tasks that have occasional contact with coworkers and the general public. Tr. 30. In his decision, the ALJ made a finding that Plaintiff would likely miss eight to ten days of work a year, and based on all of the subject limitations, found that jobs, such as marker, housekeeper, or production assembler, exist in the national economy. Tr. 37.

During the hearing, the vocational expert was asked to consider a hypothetical that includes Plaintiff's age, education background, work history, and residual functional capacity including an ability to lift 40 pounds occasionally, and 15 pounds frequently, stoop occasionally, and tasks that are simple with occasional

contact with the public and coworkers. Tr. 66. Based on this information, the vocational expert found that jobs such as marker, housekeeper, or production assembler exist in the national economy. Tr. 66–67. The ALJ then asked the vocational expert to consider what level of absenteeism is tolerated in the jobs provided, and it was ultimately determined that three months of consistent one a day per month absences, or "less than one per month," for the whole year, would be compatible with employment. Tr. 68. Based on the vocational expert's opinion, an employee could be absent from work nine times a year and maintain employment. Therefore, the ALJ's use of a residual functional capacity that included ten absences a year for a determination that Plaintiff could perform such jobs as marker, housekeeper, or production assembler, is in error because it is inconsistent with the vocational expert's finding at the hearing. However, an error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, the high end of the absence day included in Plaintiff's RFC is harmless error because it does not materially alter the ALJ's disability finding.

**CONCLUSION**

Having reviewed the record and the findings of the ALJ, the Court concludes that there was no error in the ALJ's decision.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**.

2. Defendant's Response Brief (ECF No. 14) is **GRANTED**. The final decision of the commissioner is **AFFIRMED**.

The District Court Executive is directed to enter this Order and Judgment accordingly and furnish copies to counsel.

DATED November 25, 2024.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLE XVI OF THE SOCIAL SECURITY ACT~ 19